(No. 23819.—

THE PEOPLE *ex rel.* William G. Pruemer, County Collector, Appellee, *vs.* THE ILLINOIS CENTRAL RAILROAD COMPANY, Appellant.

*Opinion filed June 11, 1937.*

CHARLES A. HELSELL, R. C. BECKETT, and PARKER, BAUER & PARKER, (E. C. CRAIG, and V. W. FOSTER, of counsel,) for appellant.

LESTER WRIGHT, State's Attorney, and PAUL TAYLOR, for appellee.

Mr. CHIEF JUSTICE FARTHING delivered the opinion of the court:

On August 7, 1934, school districts 30, 80 and 81, in Effingham county, made their 1934 tax levies. The county collector made application for judgment and order of sale of land for delinquent taxes, whereupon the Illinois Central Railroad Company, objected to all the tax levied in

the first two districts and to most of that levied in district 81. Its objections were overruled by the county court, and it has appealed.

District 81 is a community high-school district with a four-year high-school, and the other two are rural school districts. The gist of the objections is that the taxing authorities in the three districts did not use sound discretion in arriving at the financial needs of the districts, and so grossly abused the discretion resting in them as to make the 1934 levies invalid and void in whole or in part.

The appellant's objection to the levy in district 30 was that the district had $3057.83 cash on hand on June 30, 1934; that $291.50 was received by it during an eleven months' period from the occupational tax. Based on this, the receipts from that source for one year would be $318 and for two years $636. The objector also says that the $160.98 was paid to this district for a six-months' period from the State motor fuel tax, which would result in an average of $321.96 per year, or $643.92 for two years. It claimed that, from the last two named sources, $1279.92 would be obtained from July 1, 1934, to June 30, 1936. This, added to the cash on hand, gives a total of $4337.75, which appellant says was the amount available for the two-year period. Appellant says that the average annual cost of operation of district 30 during the three years prior to the levy, was $1308.41, and for two years it would be $2616.82, and that the amount due for bonds and interest during the two years increase that amount to a total of $3166.82, and that, therefore, no levy should have been made in 1934. The district levied $1.10 on each $100 valuation, and appellant's tax was $304.88.

Similar objections were made to the tax of $183.27 levied in district 80 at the rate of seventy cents on each $100 valuation. Basing the estimate on the cost of operation for the three preceding years in that district, the appellant says that the average cost of operation for one year

would be $654.93, or $1309.86 for two years, and that there would be available for that period $2122.17.

In district 81 the appellant contends that there would be available for the two-year period, beginning on July 1, 1934, $20,260.22, while the amount required was $21,981.10. The tax rate there was sixty-five cents, and the tax assessed against appellant's property was $872.63. It contends, in its objection, that a rate of ten cents on the $100 of valuation would have been sufficient to raise an amount which, added to the funds available, would meet the needs of the district for the school year, and that the excess of that rate is void. It claimed $738.23 of the tax levied against it was illegal.

The objector showed that there were no outstanding checks or school orders in the three districts on July 1, 1934. Financial statements, which are admitted to be correct, were introduced in evidence. They covered the receipts and expenditures, as well as the cash on hand, in each of the three districts for each of the four years preceding June 30, 1935.

The following table is taken from the financial statements above referred to and shows the condition existing in the three districts at the time the 1934 levies were made.

| Dist. No. | Average annual cost of operation for three prior years. | Levy for 1934. | Cash on hand July 1, 1934. | Balance of 1933 taxes collected after levy of 1934. |
|---|---|---|---|---|
| 30 | $ 1,708.40 | $ 1,450.00 | $ 1,989.97 | $1,077.86 |
| 80 | 657.59 | 700.00 | 955.72 | 441.65 |
| 81 | 14,987.75 | 12,000.00 | 11,383.32 | 5,219.18 |

The amounts paid to redeem bonds and to pay interest thereon, in districts 30 and 81, are included in the items showing the average annual cost of operation. There was no bonded indebtedness in district 80.

The appellant's proof consisted in the financial statements for the four years, and testimony showing there were no outstanding checks or school orders issued before July 1, 1934, which remained unpaid.

Members of the respective boards of directors testified for appellee. They stated they did not know on August 7, 1934, exactly how much would be required for the fiscal year. Their testimony showed that in district 30 the board intended to improve the school grounds and to repair and paint the school building. The heating plant was in poor repair and might have to be replaced at any time. The item for bonds and interest due in 1934-5 in this district was $550. The directors in the three districts testified that they knew what the districts had received from the State during the preceding year, but that they could not anticipate the exact amount which their districts would receive from outside sources following the levy of 1934, before June 30, 1935. All three districts operated on a cash basis. Some repairs were needed in district 80, and it was the opinion of all the witnesses who were directors, that the expenses in the three districts would be heavier during the 1934-5 school year than they had been in previous years. In district 81 the 1934 levy included $6000 for educational purposes, as shown by the testimony. A five years' premium of $1800 for insurance on the school building, was due in September, 1934. The district had made a bond issue of $75,000 to build its high-school, and these bonds will mature in 1945. This district had employed one extra teacher, and teachers' salaries had been increased. The gymnasium floor, which had been damaged by the overflow of a natural watercourse, needed repairs or replacement.

The objections of appellant are misleading with reference to the period in which the first two districts were to receive money from the State motor fuel tax. That period was only eight months and the statute provided it should

end March 1, 1935. Laws of 1933-4; first, second and third sp. sess. p. 227.

It is true that, as to many of the improvements and repairs mentioned in the testimony, no definite time had been fixed at which they were to be made. Many of them were not made in the fiscal year for which the 1934 levy was made. However, this testimony does show that, in several instances, additional expenses would possibly be incurred, which made the amount of funds necessary for the year somewhat uncertain. The item of $1800 insurance premium in district 81 was definite and certain, and it was not material that arrangements were made later by the board to pay the insurance annually, instead of for a five-year period. The condition of the heating plant in district 30 warranted its directors in providing funds for its replacement, even though it later developed that, by repairing the grates, the plant could be used a little longer. The burden was not upon the directors of these school districts to show that they had exercised reasonable discretion in making the 1934 levies. The burden was on the objector to show a clear abuse of discretion, and this it has failed to do.

The same questions are involved here as in *People* v. *Illinois Central Railroad Co. (ante,* p. 408.) The rules there stated are applicable to the facts presented by this record. Even if somewhat more was levied in each of the three districts than was necessary to meet the expenses during the fiscal year ending June 30, 1935, this, alone, would not warrant us in reversing the judgment of the county court, in the absence of a clear showing that the school directors had grossly abused their discretion.

The judgment of the county court of Effingham county is, therefore, affirmed.                    *Judgment affirmed.*